THE STATE OF OHIO, APPELLEE, v. BODE, APPELLANT.

[Cite as *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519.]

(No. 2013–1044—Submitted June 10, 2014—Decided April 23, 2015.)

LANZINGER, J.

{¶ 1} In this appeal, we consider whether the state may use an uncounseled juvenile adjudication to enhance penalties for an adult conviction for operating a motor vehicle while intoxicated ("OVI") under R.C. 4511.19(G)(1)(d). We hold that the rule announced in *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, applies to juveniles as well as adults. Therefore, an adjudication of delinquency may not be used to enhance the penalty for a later offense under R.C. 4511.19(G)(1)(d) when the adjudication carried the possibility of confinement, the adjudication was uncounseled, and there was no effective waiver of the right to counsel.

## I. Case Background

{¶ 2} In 1992, while he was still a minor, appellant, Jason T. Bode, was adjudicated delinquent for committing the equivalent of an OVI offense, a violation of R.C. 4511.19(A)(1)(a). He was not then represented by counsel. He was later convicted four times as an adult for OVI between 1996 and 1999.

{¶ 3} Typically, a violation of R.C. 4511.19(A)(1) is a first-degree misdemeanor. R.C. 4511.19(G)(1)(a). But in 2011 Bode was indicted for and convicted of OVI offenses that became felonies under the enhancing provision of R.C.

4511.19(G)(1)(d), which provides that "an offender who, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more violations of [OVI] is guilty of a felony of the fourth degree."

{¶ 4} The state added Bode's 1992 juvenile OVI adjudication to his four prior adult convictions to reach the "five or more" offenses threshold required for the 20–year look-back enhancement under R.C. 4511.19(G)(1)(d). Bode sought to suppress the evidence of his 1992 juvenile adjudication, citing *Nichols v. United States,* 511 U.S. 738, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). He claimed that the uncounseled juvenile adjudication violated his constitutional right to counsel and that the state could not, therefore, use it to reach the R.C. 4511.19(G)(1)(d) enhancement threshold. The trial court overruled the motion to suppress.

{¶ 5} Bode was then convicted of two counts, each with a specification under R.C. 2941.1413. Count 3 charged a violation of R.C. 4511.19(A)(1)(f) and (G)(1)(d)(ii), and Count 5 charged a violation of R.C. 4511.19(A)(1)(h).[1] Each specification charged that Bode, within 20 years of the offense, had previously been convicted of or pleaded guilty to five or more equivalent OVI offenses. Each specification elevated the main offense to a fourth-degree felony, R.C. 4511.19(G)(1)(d), and R.C. 4511.19(G)(1)(d)(ii) mandates an additional prison term of one, two, three, four, or five years. *See also* R.C. 2941.1423 and 2929.13(G)(2).[2]

{¶ 6} Bode was sentenced to a total three-year mandatory prison term as a result of the convictions on the two specifications and 54 months of confinement, suspended, with five years of community control for the two OVI counts. His sentence also included a lifetime driver's license suspension, the forfeiture of his vehicle, a fine of $2,700, court costs, and fees.

{¶ 7} Bode appealed, and the Fifth District Court of Appeals affirmed.

{¶ 8} We accepted Bode's discretionary appeal on the following proposition of law:

---

1. The trial court dismissed Counts 1, 2, and 4, along with their accompanying specifications, when Bode pled no contest to Counts 3 and 5 and their accompanying specifications.

2. R.C. 2929.13(G)(2) provides:

    [I]f the offender is being sentenced for a fourth degree felony OVI offense and the court does not impose a mandatory term of local incarceration under division (G)(1) of this section, the court shall impose upon the offender a mandatory prison term of one, two, three, four, or five years if the offender also is convicted of or also pleads guilty to a specification of the type described in section 2941.1413 of the Revised Code [five or more OVI offenses in preceding 20 years] * * *.

An uncounseled juvenile adjudication for operating a vehicle under the influence of alcohol (OVI), without a valid waiver of counsel, can not be used to enhance subsequent OVI charges when the juvenile is ordered to complete a 3–day driver intervention program (DIP), subject to potential detention if the DIP is not completed.

136 Ohio St.3d 1556, 2013-Ohio-4861, 996 N.E.2d 985.

{¶ 9} We adopt the proposed proposition, but with modifications. We do not consider whether the driver-intervention program in this case amounted to confinement, because we do not limit the right to counsel to situations in which there is actual incarceration or confinement. Instead, we hold that an adjudication of delinquency may not be used to enhance the penalty for a later offense when the adjudication carried the possibility of confinement, the adjudication was uncounseled, and there was no effective waiver of the right to counsel.

{¶ 10} We therefore reverse the judgment of the court of appeals.

## II. Legal Analysis

{¶ 11} Bode argues that because he did not waive his right to counsel at his 1992 juvenile adjudication, the state should not be allowed to use that disposition against him as an OVI enhancement tool.

{¶ 12} R.C. 4511.19(G)(1)(d) refers to one who "previously has been convicted of or pleaded guilty to" OVI offenses. Even though juvenile cases are civil rather than criminal and juveniles are adjudicated delinquent rather than found guilty, R.C. 2901.08(A) provides that an offender's juvenile adjudication for delinquency is a "conviction" for purposes of determining the sentence to be imposed for a later offense. Thus, juvenile adjudications can be counted under the five-convictions threshold of R.C. 4511.19(G)(1)(d). *State v. Adkins*, 129 Ohio St.3d 287, 2011-Ohio-3141, 951 N.E.2d 766. Bode acknowledges his 1992 adjudication of delinquency but challenges its later use because he had no attorney in his juvenile case and he did not waive the right to an attorney. No one disputes these facts. The question is whether the fact that his juvenile disposition did not subject him to confinement means that he had no right to counsel.

*A juvenile's due-process right to counsel*

{¶ 13} The United States Supreme Court held nearly 50 years ago that due process demands that juveniles have the right to counsel during delinquency proceedings and that "the assistance of counsel is * * * essential for the determination of delinquency, carrying with it *the awesome prospect* of incarceration in a state institution." (Emphasis added.) *In re Gault*, 387 U.S. 1, 36–37, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

{¶ 14} This right to counsel attaches in any juvenile case in which actual imprisonment *is possible*.

> [T]he Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.

*Id.* at 41.

{¶ 15} We have recognized that the right to counsel "flows to the juvenile through the Due Process Clause of the Fourteenth Amendment, not the Sixth Amendment." *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 79, citing *Gault* at 41. And we have also explained that the General Assembly acknowledged the importance of counsel in juvenile proceedings by codifying a juvenile's constitutional right to appointed counsel through R.C. 2151.352, thus providing "a statutory right to appointed counsel that goes beyond constitutional requirements." *Id.* at ¶ 83.

{¶ 16} Former R.C. 2151.352, in effect in 1992 at the time of Bode's juvenile disposition, provided that a child "is entitled to representation by legal counsel *at all stages of the proceedings* and if, as an indigent person, he is unable to employ counsel, to have counsel provided for him." (Emphasis added.) 136 Ohio Laws, Part I, 1891. *See also* former Juv.R. 4(A), 46 Ohio St.2d xxxvii. We have held that this right to counsel may be waived, explaining that "if the trial court substantially complies with Juv.R. 29(D) in accepting an admission by a juvenile, the plea will be deemed voluntary absent a showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver." *C.S.* at ¶ 113.

*Right to counsel upon possibility of confinement*

{¶ 17} We have already held that the state may not automatically use a prior uncounseled conviction of an adult to enhance a later violation of R.C. 4511.19 and that when the issue is raised, the state must prove that a valid waiver of counsel was made. *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, paragraph one of the syllabus.

{¶ 18} This rule must apply to juveniles as well.

{¶ 19} The state argues that the right to counsel does not attach unless the defendant was subjected to actual confinement, relying on *Scott v. Illinois*, 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). The state concludes that

because Bode was not confined, the lower courts were correct in determining that the adjudication could be used to enhance his later offenses. This limitation, however, fails to account for the fact that juvenile proceedings are civil, and therefore juvenile rights to counsel arise under the constitutional protection of due process. *C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 76, 79–80. In *Gault*, the court held that the due-process right to counsel attached to all juvenile proceedings that pose a *threat* of confinement. *Gault*, 387 U.S. at 41, 87 S.Ct. 1428, 18 L.Ed.2d 527.

{¶ 20} The trial court here misread a limitation into *Brooke* when it attempted to apply that case to these facts. *Brooke* did mention the fact of confinement as a factor in determining whether the right to counsel for a misdemeanor had attached. But in that case, we did not intend to limit the right to challenge the use of a previous conviction (or delinquency adjudication) to those who actually received a term in custody. We mentioned Brooke's custodial sentence because that was a fact of her case. As we stated at the outset:

> Generally, a past conviction cannot be attacked in a subsequent case. However, there is a limited right to collaterally attack a conviction when the state proposes to use the past conviction to enhance the penalty of a later criminal offense. A conviction obtained against a defendant who is without counsel, or its corollary, an uncounseled conviction obtained without a valid waiver of the right to counsel, has been recognized as constitutionally infirm. *State v. Brandon* (1989), 45 Ohio St.3d 85, 86, 543 N.E.2d 501 * * *.

*Brooke* at ¶ 9. Therefore, while paragraph one of the syllabus in *Brooke* includes the phrase "resulted in confinement" in reflecting the facts of that case, the phrase should not be read as limiting application of its principles to cases in which the conviction or adjudication directly resulted in confinement.

{¶ 21} Nevertheless, the state wishes to limit the right to counsel to cases in which an offender has received a sentence of custody or confinement. It attempts to characterize Bode's 1992 juvenile disposition as one that did not involve custody or confinement by emphasizing that he did not receive a suspended sentence and was not notified of any consequences of failing to successfully complete the program or follow-up. His disposition was a referral to a treatment program primarily intended to "educate, counsel, and assess" attendees by offering educational films and lectures and conducting individual and group counseling. The program did not fingerprint or photograph attendees or require them to change out of their street clothes. Uniformed officers were not present, the program had an "open door" policy, there were no locked cells, and

attendees were never kept behind locked doors. They could, and in some cases did, choose to leave the program early. In short, the state says that this was not a sentence of confinement that would give rise to a right to counsel.

{¶ 22} But whether jail or prison was actually imposed as a disposition is irrelevant. It is the *potential* sanction that matters here.

{¶ 23} We recognize that the United States Supreme Court, construing the federal Constitution, does limit the right to counsel to cases in which actual incarceration was imposed. *Scott v. Illinois,* 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383; *Nichols v. United States,* 511 U.S. at 743, 114 S.Ct. 1921, 128 L.Ed.2d 745. But states have the ability under their own constitutions to grant greater rights than those provided by the federal Constitution. In *Nichols,* the court acknowledged that a state may give greater protections concerning the right to counsel:

> Of course States may decide, based on their own constitutions or public policy, that counsel should be available for all indigent defendants charged with misdemeanors. Indeed, many, if not a majority, of States guarantee the right to counsel whenever imprisonment is authorized by statute, rather than actually imposed.

*Nichols* at 748, fn. 12. The dissent instead would have us confined by federal cases alone.

{¶ 24} But in Ohio, we have already looked to the *possibility* of confinement as the factor that determines whether counsel is necessary in a particular case. In *State v. Schleiger,* 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, we considered whether a defendant is entitled to counsel at a resentencing hearing conducted solely for the purpose of properly imposing statutorily mandated postrelease control in a felony case. *Id.* at ¶ 12–17. We determined that a right to counsel exists in critical stages of a criminal proceeding to ensure that the court complies with statutes, the defendant understands proceedings, and issues are preserved for appeal. *Id.* at ¶ 16. In this case, although Bode would have committed what would have been a misdemeanor had he been an adult at the time, he still faced the possible penalty of confinement. *See* R.C. 2152.21(A)(6) and former 2151.356(A)(6) as effective in 1992, 143 Ohio Laws, Part I, 620 (providing for commitment). He was entitled to an attorney "at all stages of the proceedings," pursuant to former R.C. 2151.352. 136 Ohio Laws, Part I, 1891. And while the dissent attempts to minimize misdemeanors, saying that defendants should have a right to counsel only when actual prison is imposed, it is difficult to see any logic or purpose in the felony/misdemeanor distinction. An attorney is crucial whenever there is the *possibility* of custody—that is what an

attorney will protect against. There is no evidence here that Bode was counseled before he was adjudicated delinquent in 1992 or that he voluntarily chose to give up the right to an attorney. Ohio law provided that Bode was entitled to an attorney, and his uncounseled adjudication amounted to an unconstitutional violation of his due-process rights. *See Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, paragraph one of the syllabus.

{¶ 25} According to the state's logic, Bode's uncounseled disposition became a 20–year ticking time bomb. Because he did not actually receive a term of confinement as a juvenile (which under the statutes was a possibility) and although there is no proof that he waived his right to counsel, the state would use Bode's juvenile disposition as an element to raise a later misdemeanor OVI to a felony that *requires* a prison term. R.C. 4511.19(G)(1)(d)(i); R.C. 2941.1413.

{¶ 26} Yet in *Nichols,* a case involving the Federal Sentencing Guidelines, Justice Souter in his concurrence in judgment expressed his understanding of why the court had required actual imprisonment as a condition for the right to counsel: "the concern over reliability raised by the absence of counsel is tolerable when a defendant does not face the deprivation of his liberty." *Nichols,* 511 U.S. at 750, 114 S.Ct. 1921, 128 L.Ed.2d 745 (Souter, J., concurring in judgment). But he also noted: "I am shy, however, of endorsing language in the Court's opinion that may be taken as addressing the constitutional validity of a sentencing scheme that automatically requires enhancement for prior uncounseled convictions * * *." *Id.* at 754. Justice Blackmun directly stated in his dissent that no uncounseled conviction should ever be the basis for a prison term. *Id.* at 754–758 (Blackmun, J., dissenting) (an uncounseled disposition that would have been invalid if prison was imposed directly should not be counted toward imprisonment indirectly by using it to enhance a later sentence).

{¶ 27} We agree and accordingly apply the reasoning of *Brooke* and hold that unless evidence of a valid waiver of counsel is shown, the uncounseled juvenile disposition may not be used.

### III. Conclusion

{¶ 28} We clarify that due process protects the right to counsel for juveniles at every stage of the proceedings. Furthermore, the possibility of confinement as a disposition for a juvenile adjudication requires waiver of the right to counsel by the juvenile before the adjudication may be validly used as an enhancement offense under R.C. 4511.19.

{¶ 29} Just as we held for adults in *Brooke,* we hold that for juveniles, the state may not use a prior, uncounseled delinquency adjudication to enhance a sentence for a later violation of R.C. 4511.19 if the right to counsel was violated because an appropriate waiver was not obtained.

{¶ 30} The judgment of the court of appeals is reversed, and the cause is remanded to the trial court for resentencing.

Judgment reversed<br>and cause remanded.

O'CONNOR, C.J., and PFEIFER and O'NEILL, JJ., concur.

O'DONNELL, KENNEDY, and FRENCH, JJ., dissent.

---

FRENCH, J., dissenting.

{¶ 31} The "due course of law" provision in the Ohio Constitution is "the equivalent of the 'due process of law' clause in the Fourteenth Amendment." *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941); *see also Peebles v. Clement*, 63 Ohio St.2d 314, 317, 408 N.E.2d 689 (1980). For this reason, we look to federal case law in interpreting the right to counsel under both the Ohio and federal constitutions. *State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 8, 399 N.E.2d 66 (1980); *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, 979 N.E.2d 297, ¶ 24–32.

{¶ 32} Or at least, that used to be the law.

{¶ 33} Today's majority opinion creates an entirely new, and entirely unfounded, interpretation of the constitutional right to counsel. Initially, the majority recognizes that federal constitutional limits—limits we have avowed as the equivalent of our own—would set "actual imprisonment," *not* possible imprisonment, as the trigger for the right to counsel in Bode's case. *Scott v. Illinois*, 440 U.S. 367, 373–374, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *see also Nichols v. United States*, 511 U.S. 738, 743, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) ("where no sentence of imprisonment [is] imposed, a defendant charged with a misdemeanor ha[s] no constitutional right to counsel"). But no matter, the majority concludes, because "states have the ability under their own constitutions to grant greater rights than those provided by the federal Constitution." Majority opinion at ¶ 23. True enough. But we should not exercise this solemn ability in the face of clear precedent to the contrary, *see State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 12, or to reach specific results in specific cases. And at the very least, when we do exercise the awesome power of creating new constitutional rights, that undertaking should be grounded in paragraphs, if not pages, of compelling legal analysis—Why would we do this? Under what rationale? By what case law? For what purpose and to what end?—something more than "a couple of waves of the Supreme Wand to produce the desired result." *Young v. United Parcel Serv., Inc.*, —— U.S. ——, 135 S.Ct. 1338, 1364, 191 L.Ed.2d 279 (2015) (Scalia, J., dissenting). Indeed, we have

sworn not to create new, Ohio-specific constitutional doctrines absent "compelling reasons why Ohio constitutional law should differ from the federal law." *State v. Wogenstahl,* 75 Ohio St.3d 344, 363, 662 N.E.2d 311 (1996). And the majority offers none.

{¶ 34} First, it cites *In re Gault,* 387 U.S. 1, 36–37, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), for the proposition that a juvenile's constitutional right to counsel attaches in any case in which imprisonment is *possible.* But *Gault* predates the Supreme Court's establishment of the "actual imprisonment" standard. In *Scott* and *Nichols,* both post-*Gault* decisions, the court clarified when the constitutional right to counsel attaches in misdemeanor cases. And these more recent cases set that line at "actual"—not "possible"—imprisonment. *Scott* at 373; *Nichols* at 743. In fact, the post-*Gault* line of cases explicitly denounces the standard that the majority advances now. *See, e.g., Scott* at 373 (rejecting the "authorized imprisonment" standard espoused in Justice Brennan's dissent, *id.* at 382, in favor of an "actual imprisonment" standard); *Nichols* at 746.

{¶ 35} The majority's references to Bode's statutory right to counsel are likewise misplaced. This case concerns only Bode's *constitutional* right to counsel. To begin with, Bode did not challenge his juvenile adjudication on statutory grounds. More importantly, though, the question before us is whether the state can use Bode's prior conviction for enhancement purposes. And the only thing that could prevent that enhancement is constitutional infirmity in the prior conviction, not statutory infirmity. *Nichols* at 746–749; *Brooke* at ¶ 9. Therefore, in evaluating whether the state can use Bode's juvenile adjudication, this court's sole inquiry is whether the adjudication passed constitutional muster. Statutory guarantees are irrelevant here.

{¶ 36} Finally, the majority relies on *State v. Schleiger,* 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, as support for the claim that in Ohio, we look to "the *possibility* of confinement." (Emphasis sic.) Majority opinion at ¶ 24. The majority argues, and rightly so, that our opinion in *Schleiger* does not apply the "actual imprisonment" standard for triggering the right to counsel. But of course it doesn't. *Schleiger* was a felony case. *Id.* at ¶ 1, 3. The "actual imprisonment" standard applies only in misdemeanor cases. *Nichols* at 743. So it proves nothing to say that the "actual imprisonment" standard is missing from *Schleiger.* It certainly does not substantiate the claim that this court "grant[s] greater rights that those provided by the federal Constitution." Majority opinion at ¶ 23.

{¶ 37} In fact, *Schleiger* demonstrates exactly the opposite. *Schleiger* was a right-to-counsel case in which we unreservedly cited and followed federal precedent. *Id.* at ¶ 13–14. The irony is palpable: the majority cites a case relying

exclusively on federal right-to-counsel case law to argue that we do not follow federal right-to-counsel case law.

{¶ 38} What is perhaps even more troubling is that this court already adopted and followed the *Nichols* "actual imprisonment" standard in a past OVI-enhancement case. In *Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, at ¶ 12, we held that "[a]n uncounseled conviction cannot be used to enhance the penalty for a later conviction *if the earlier conviction resulted in a sentence of confinement.*" (Emphasis added.) We repeated this holding multiple times throughout the opinion, including in the syllabus itself. *Id.* at paragraph one of the syllabus ("For purposes of penalty enhancement in later convictions under R.C. 4511.19, when the defendant presents a prima facie showing that prior convictions were unconstitutional because they were uncounseled *and resulted in confinement,* the burden shifts to the state to prove that the right to counsel was properly waived" [emphasis added] ); *see also id.* at ¶ 11.

{¶ 39} There is no possible way to characterize our statements in *Brooke* as just a passing nod to "the facts of that case." Majority opinion at ¶ 20. Especially because when we stated that a "sentence of confinement" was necessary, we cited the specific portion of *Nichols* that affirmed the "actual imprisonment" standard. *Brooke* at ¶ 12, citing *Nichols,* 511 U.S. at 749, 114 S.Ct. 1921, 128 L.Ed.2d 745.

{¶ 40} Our history is clear: we accepted the "actual imprisonment" standard in *Brooke.* We cited *Nichols* as law in *Brooke.* Our present should be equally clear and consistent.

{¶ 41} Actual imprisonment is the standard that applies here. (Not even Bode argued otherwise.) And in this case, Bode was never sentenced to a term of imprisonment for his 1992 juvenile adjudication. Participation in an open-door substance-abuse-treatment program is not actual imprisonment. *See, e.g., State v. Nagle,* 23 Ohio St.3d 185, 186–187, 492 N.E.2d 158 (1986) (rehabilitation facility is not confinement); *State v. Watkins,* 2d Dist. Greene No. 2001–CA–15, 2001 WL 1461138, *4 (Nov. 16, 2001) ("a three-day alcohol treatment program is not actual imprisonment" under *Nichols* ). Nor is it, as Bode argues, the equivalent of a suspended sentence of imprisonment. *See Alabama v. Shelton,* 535 U.S. 654, 674, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002). Accordingly, Bode had no constitutional right to counsel at the time of his adjudication. I would therefore hold that the state can use the adjudication to enhance the penalties for Bode's 2011 OVIs,[3]

---

3. I stress, too, that the state does not even need the juvenile adjudication to enhance the penalty for Bode's latest OVI. Importantly, this case concerns two 2011 OVI incidents: one from May 2011 and one from December 2011. Bode's December 2011 offense was his seventh overall, if we include the juvenile adjudication. But even if we do not include the juvenile adjudication, the December

even though Bode was unrepresented at the time of the juvenile proceedings. *Nichols* at 746–747 (an uncounseled conviction that did not result in actual imprisonment "may be relied upon to enhance the sentence for a subsequent offense"); *Brooke,* 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, at ¶ 12.

{¶ 42} Rather than craft new constitutional rights without justification, I would follow our precedent and United States Supreme Court precedent and affirm the court of appeals. Because the majority chooses otherwise, I respectfully dissent.

O'DONNELL and KENNEDY, JJ., concur in the foregoing opinion.

———————

Gregg Marx, Fairfield County Prosecuting Attorney, and Jocelyn S. Kelly, Assistant Prosecuting Attorney, for appellee.

Dagger, Johnston, Miller, Ogilvie & Hampson, Scott P. Wood, and Alyssa L. Parrott, for appellant.

———————

2011 OVI is still Bode's sixth, meaning it meets the five-or-more-prior-convictions requirement for felony enhancement, even under the majority's holding. *See* R.C. 4511.19(G)(1)(d).