French, J.,
dissenting.
{¶ 44} I respectfully dissent.
{¶ 45} The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall “deprive any person of life, liberty, or property without due process of law.” And Article I, Section 16 of the Ohio Constitution states, “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.” Until recently, this court had long held that the Ohio Constitution’s “due course of law” provision is “the equivalent of the ‘due process of law’ clause in the Fourteenth Amendment.” Direct Plumbing Supply Co. v. Dayton, 138 Ohio St. 540, 544, 38 N.E.2d 70 (1941). Accord Stetter v. R.J. Corman Derailment Servs., L.L.C., 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 69. But see State v. Bode, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-24 (finding a *479 greater due-process right to counsel for a juvenile under the Ohio Constitution than under the United States Constitution).
{¶ 46} To be sure, as a document of independent force, the Ohio Constitution may provide greater protections of individual rights and civil liberties than the United States Constitution mandates. Arnold v. Cleveland, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. And a majority of this court has found greater protection under the Ohio Constitution than the United States Constitution provides in various criminal contexts other than due process. See In re A.G., 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 11-13 (double jeopardy); State v. Brown, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶ 23 (extraterritorial stop for a minor misdemeanor); State v. Brown, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 7 (protection against warrantless arrests for minor misdemeanors); State v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 48 (right against self-incrimination). See also State v. Mole, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 23 (plurality opinion) (stating that the Ohio Constitution’s guarantee of equal protection independently precludes the classification at issue, without expressly finding that the Ohio Constitution provides greater protection than the United States Constitution). But the fact that the Ohio Constitution may provide greater protection than the United States Constitution is different from the question whether it does. See State v. Robinette, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997) (“Despite this wave of New Federalism, where the provisions are similar and no persuasive reason for a differing interpretation is presented, this court has determined that protections afforded by Ohio’s Constitution are coextensive with those provided by the United States Constitution”).
{¶ 47} While asserting no basis—other than mere permissibility—for holding that the Ohio Constitution affords juveniles greater due-process protections regarding transfer than the United States Constitution provides, and without considering whether the federal Due Process Clause guarantees juveniles an individualized amenability hearing, the majority concludes that Ohio’s mandatory-transfer provisions—R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b)—violate Article I, Section 16 of the Ohio Constitution. I disagree with the majority’s cavalier decision to create greater protections under the Ohio Constitution, absent compelling reasons to do so. And on the merits, I disagree with the majority’s conclusion that Ohio’s statutory mandatory-transfer provisions are unconstitutional.
{¶ 48} Appellant, Matthew I. Aalim, raises a facial due-process challenge to Ohio’s mandatory-transfer procedures. In 1969, the General Assembly enacted a statutory scheme by which a juvenile court could remove certain juveniles from its authority and transfer them to adult court for criminal prosecution. State v. *480 D.W., 133 Ohio St.3d 434, 2012-Ohio-4544, 978 N.E.2d 894, ¶ 9. The current scheme provides for two types of transfer: mandatory and discretionary. Id. at ¶ 10. Discretionary transfer affords juvenile-court judges discretion to transfer to adult court juveniles who do not appear amenable to care or rehabilitation within the juvenile system and who appear to be a threat to public safety. R.C. 2152.12(B). “An amenability hearing helps determine whether a juvenile who is eligible for discretionary [transfer] will be transferred to adult court.” D.W. at ¶ 12. Mandatory transfer, on the other hand, removes judicial discretion and requires transfer in certain circumstances, based on the juvenile’s age and offense. R.C. 2152.12(A). A juvenile who qualifies for mandatory transfer is not statutorily entitled to an amenability determination, but the juvenile is entitled to a hearing at which the juvenile court must determine before transferring the juvenile for criminal prosecution that the juvenile was 16 or 17 years old at the time of the charged conduct and that there is probable cause to believe that the juvenile committed that conduct. R.C. 2152.12(A)(1). Here, we consider the statutory provisions regarding mandatory transfer.
{¶ 49} Aalim, as a 16-year-old alleged to be delinquent as a result of a category-two offense committed with a firearm, fell within the category of juveniles subject to mandatory transfer. R.C. 2152.10(A)(2)(b). R.C. 2152.12(A)(l)(b)(ii) required the juvenile court to transfer Aalim to adult court upon a finding of probable cause to believe that he committed the charged offense.
{¶ 50} Aalim argues that Ohio’s mandatory-transfer provisions are unconstitutional because due process requires an amenability hearing—giving the juvenile the opportunity to demonstrate a capacity for change—before a juvenile-court judge may transfer any juvenile to adult court. To succeed on his due-process challenge, Aalim must prove beyond a reasonable doubt that Ohio’s mandatory-transfer provisions are clearly incompatible with constitutional due process. State ex rel. Dickman v. Defenbacher, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. To do so, he must overcome a strong presumption that the provisions are constitutional. R.C. 1.47; State ex rel. Jackman v. Cuyahoga Cty. Court of Common Pleas, 9 Ohio St.2d 159, 161, 224 N.E.2d 906 (1967). In my view, Aalim does not satisfy that heavy burden.
{¶ 51} The phrase “due process” “expresses the requirement of ‘fundamental fairness,’ ” and applying the Due Process Clause is “an uncertain enterprise which must discover what ‘fundamental fairness’ consists of in a particular situation.” Lassiter v. Durham Cty. Dept. of Social Servs., 452 U.S. 18, 24-25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). But the Due Process Clause guarantees more than fair process; it also provides heightened protection against governmental interference with certain fundamental rights and liberty interests. Wash *481 ington v. Glucksberg, 521 U.S. 702, 719-720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). “So-called ‘substantive due process’ prevents the government from engaging in conduct that ‘shocks the conscience’ * * * or interferes with rights ‘implicit in the concept of ordered liberty’ * * United States v. Salerno, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), quoting Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and Palko v. Connecticut, 302 U.S. 319, 325-326, 58 S.Ct. 149, 82 L.Ed. 288 (1937), respectively. Substantive due process bars “certain arbitrary, wrongful government actions ‘regardless of the fairness of the procedures used to implement them.’ ” Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Procedural due process, on the other hand, requires the government to implement any action that deprives a person of life, liberty or property in a fair manner, even if the governmental action survives substantive due-process scrutiny. Id.
{¶ 52} Ohio’s mandatory-transfer provisions do not offend either substantive or procedural due process.
{¶ 53} Substantive due process protects only “fundamental rights and liberties which are, objectively, ‘deeply rooted in this Nation’s history and tradition’ * * * and ‘implicit in the concept of ordered liberty,’ such that ‘neither liberty nor justice would exist if they were sacrificed.’ ” Glucksberg at 720-721, quoting Moore v. E. Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), and Palko at 325-326; see also State v. Burnett, 93 Ohio St.3d 419, 427, 755 N.E.2d 857 (2001), citing Moore at 503. Protected rights and liberties include the specific freedoms guaranteed by the Bill of Rights as well as such “deeply rooted” rights as the right to marry, the right to have children, and the right to bodily integrity. Glucksberg at 720. The United States Supreme Court has expressed reluctance to expand the concept of substantive due process. Id.
{¶ 54} It is evident from the history and evolution of juvenile proceedings in this country, as well as courts’ consistent rejection of claims of fundamental rights to juvenile proceedings, that there is no fundamental right deeply rooted in the nation’s history to juvenile-court proceedings or to an amenability hearing. Juvenile courts are legislative creations rooted in social-welfare philosophy. In re C.S., 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 66, citing Kent v. United States, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The first juvenile court was not established in this country until 1899, In re Gault, 387 U.S. 1, 14, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and it was not until 1937 that the Ohio General Assembly conferred exclusive jurisdiction over minors upon Ohio’s juvenile courts, In re Agler, 19 Ohio St.2d 70, 72, 249 N.E.2d 808 (1969).
*482 {¶ 55} Criminal common law did not differentiate between adults and juveniles who had reached the age of criminal responsibility—seven at common law. Mack, The Juvenile Court, 28 Harv.L.Rev. 104, 106 (1909). A juvenile offender who was over the age of criminal responsibility “was arrested, put into prison, indicted by the grand jury, tried by a petit jury, under all the forms and technicalities of our criminal law, with the aim of ascertaining whether it had done the specific act—nothing else—and if it had, then of visiting the punishment of the state upon it.” Id. It was only the advent of juvenile statutes and juvenile courts that advanced the age of criminal responsibility and created different procedures for juvenile adjudication. Id. at 109.
{¶ 56} This court has repeatedly held that any right to juvenile proceedings is purely statutory. Agler at 72, citing Prescott v. State, 19 Ohio St. 184, 187-188 (1869). And other state and federal courts have similarly rejected the idea of a fundamental constitutional right to juvenile status or juvenile proceedings. See, e.g., State v. Tyler, 286 Kan. 1087, 1097, 191 P.3d 306 (2008) (“A juvenile has no constitutional right to be adjudicated under the Juvenile Justice Code”); Manduley v. Superior Court, 27 Cal.4th 537, 564, 117 Cal.Rptr.2d 168, 41 P.3d 3 (2002); State v. Angel C., 245 Conn. 93, 124, 715 A.2d 652 (1998); State v. Behl, 564 N.W.2d 560, 567 (Minn.1997); People v. Hana, 443 Mich. 202, 220, 504 N.W.2d 166 (1993); Jahnke v. State, 692 P.2d 911, 928-929 (Wyo.1984), overruled on other grounds, Vaughn v. State, 962 P.2d 149, 151 (Wyo.1998); State v. Cain, 381 So.2d 1361, 1363 (Fla.1980); People v. Jiles, 43 Ill.2d 145, 148, 251 N.E.2d 529 (1969); Woodard v. Wainwright, 556 F.2d 781, 785 (5th Cir.1977) (“treatment as a juvenile is not an inherent right but one granted by the state legislature”). Because there is no deeply rooted, fundamental right to juvenile-court proceedings, Ohio’s mandatory-transfer provisions do not violate substantive due process.
{¶ 57} Aalim’s claim fares no better under procedural due process. To demonstrate a procedural-due-process violation, a plaintiff must first show that the state deprived him or her of a protected interest in life, liberty or property. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 567-570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Protected liberty interests may arise from the Due Process Clause itself or the laws of the states. Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), citing Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In a procedural-due-process claim, the deprivation of a constitutionally protected interest in life, liberty or property is not itself unconstitutional; what is unconstitutional is the deprivation of that interest without due process of law. Zinermon, 494 U.S. at 125, 110 S.Ct. 975, 108 L.Ed.2d 100, citing Parratt v. Taylor, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Before depriving a person of a protected interest, the state must afford the person some type of hearing unless the governmental *483 interest involved justifies delaying the hearing. Roth at 570, fn. 7, citing Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).
{¶ 58} There is “no doubt” that the Due Process Clause applies in juvenile proceedings. Schall v. Martin, 467 U.S. 253, 263, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). See also Gault, 387 U.S. at 13, 87 S.Ct. 1428, 18 L.Ed.2d 527 (“neither the Fourteenth Amendment nor the Bill of Rights is for adults alone”). But there is also no doubt that the Due Process Clause itself does not give rise to an interest in juvenile proceedings, because the right to juvenile proceedings is purely statutory, Agler, 19 Ohio St.2d at 72, 249 N.E.2d 808.
{¶ 59} To be sure, a juvenile facing a delinquency adjudication in juvenile court is entitled to certain basic constitutional rights enjoyed by adults accused of a crime. Schall at 263; Agler at 76. These include the right to counsel, the privilege against self-incrimination, the right to confront and cross-examine ■witnesses, the right to use of the beyond-a-reasonable-doubt standard of proof, and the right to be free from double jeopardy. Schall at 263, citing Gault at 31-57, In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and Breed v. Jones, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). As a result of Gault and its progeny, “juveniles secured more of the rights afforded to adults.” C.S., 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, at ¶ 74.
{¶ 60} The majority opinion states:
A common thread underlying the analysis in our juvenile cases is the recognition “that a juvenile could ‘receive} ] the worst of both worlds’ in the juvenile court system by being provided ‘neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children.’ ”
Majority opinion at ¶ 17, quoting C.S. at ¶ 70, quoting Kent, 383 U.S. at 556, 86 S.Ct. 1045, 16 L.Ed.2d 84. But when a juvenile is tried as an adult, the case does not implicate the “worst of both worlds” concern.
{¶ 61} In Kent, the Supreme Court expressed concern that juvenile courts were not measuring up to their laudable purpose of “providing] measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment.” Kent at 554. The concern that a juvenile could receive “the worst of both worlds” in the juvenile court system stemmed from juvenile courts discarding procedural safeguards available to adults in a criminal prosecution. Id. at 556; Gault, 387 U.S. at 29, 87 S.Ct. 1428, 18 L.Ed.2d 527. A juvenile like Aalim who is tried in adult court, however, *484 receives all the rights and protections afforded to juvenile offenders in juvenile court, and then some. An adult criminal court protects a juvenile’s rights; it does not diminish them.
{¶ 62} But even if we were to conclude that mandatory transfer to adult court does deprive a juvenile of a liberty interest, I would nevertheless also conclude that the process and substance of that transfer provide appropriate, predeprivation procedural protections. Because the legislature has exclusive authority to provide for treatment as a juvenile, it “may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved.” Woodard, 556 F.2d at 785. A juvenile who qualifies for mandatory transfer has the right to a pretransfer hearing at which the state must prove not only that the juvenile falls within the statutory classifications for mandatory transfer but also that probable cause exists to believe that the juvenile committed the charged offense. R.C. 2152.12(A)(1)(b); Juv.R. 30(A). At that hearing, the juvenile has an unwaivable right to counsel, the right to remain silent, the right to present evidence, the right to cross-examine witnesses, and the right to notice of the charges against him or her. Juv.R. 3(A)(1). In my view, these protections give the juvenile adequate due process prior to a transfer to adult court. Aalim apparently agrees, because he does not even argue that any procedural due process was lacking with respect to the juvenile court’s probable-cause hearing.
{¶ 63} The majority cites this court’s prior recognition that juveniles have a “special status” under Ohio law and that children are constitutionally different from adults for purposes of sentencing in support of its holdings that statutory transfer provisions must account for the differences in children versus adults and that a juvenile-court judge must have discretion to determine which children should be treated as adults and which children should not. Majority opinion at ¶ 21, 24-25. But while a majority of this court may prefer to afford juvenile-court judges discretion to determine, in all instances, whether a juvenile offender should be treated as an alleged delinquent in juvenile court or as a criminal defendant in adult court, that is an issue for the General Assembly. The Due Process Clause does not invest this court with the power to sit as a super-legislature to second-guess the General Assembly’s policy choices. See Griswold v. Connecticut, 381 U.S. 479, 482, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
{¶ 64} The majority also cites a line of recent Eighth Amendment decisions of the United States Supreme Court that establishes that children are constitutionally different from adults for purposes of sentencing and that youth is a mitigating factor. See Roper v. Simmons, 543 U.S. 551, 570-571, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (Eighth and Fourteenth Amendments forbid imposition of death penalty on juvenile offenders); Graham v. Florida, 560 U.S. 48, 77-78, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (Eighth Amendment prohibits imposition of *485 life-without-parole sentences on juvenile, nonhomicide offenders); Miller v. Alabama, 567 U.S. 460, 470, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (Eighth Amendment prohibits mandatory life-without-parole sentences for juvenile offenders). Fair enough. But the case before us now is not about the propriety of the punishment Aalim may receive. It can’t be—Aalim concedes that he may receive a shorter term of confinement in adult court than he would in juvenile court. So the majority’s reliance on the federal decisions concerning the Eighth Amendment implications for juvenile sentences is wholly misplaced here.
{¶ 65} The Ohio decisions that the majority cites are no more persuasive on the question before us. In State v. Long, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 1, this court simply applied Miller and held that a common pleas court must consider a juvenile homicide offender’s youth as a mitigating factor before imposing a sentence of life without parole. We acknowledged Miller’s statement that “ ‘children are constitutionally different from adults for purposes of sentencing.’ ” Id. at ¶ 12, quoting Miller at 471, and citing Roper and Graham. As in Roper, Graham, and Miller, the issue in Long involved the requirement that an adult court consider the youth of the defendant when sentencing a juvenile offender. Long had nothing to do with transfer procedures.
{¶ 66} In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, and In re A.G., 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, concerned juveniles’ entitlement to constitutional rights as part of delinquency adjudications in juvenile court. In A.G., the majority held that juveniles are entitled to the same double-jeopardy protections in juvenile court that adults receive. Id. at ¶ 9. C.P. involved a juvenile who remained in juvenile court as a result of the juvenile court judge’s determination that he was amenable to rehabilitation in the juvenile system. C.P. at ¶ 84. There, the court held that a procedure that required automatic imposition of adult sanctions—lifetime sex-offender registration and notification requirements—without the participation of the juvenile-court judge violated the Eighth Amendment to the United States Constitution and due process. Id. at ¶ 1. Unlike in those cases, the issue here does not concern the extent of a juvenile’s procedural rights in the course of a delinquency adjudication because the juvenile court transferred Aalim to adult court, where he will be afforded the full panoply of rights available to adults.
{¶ 67} Finally, the majority in Bode, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, at ¶ 29, held that the rule announced in State v. Brooke, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024—that a constitutionally infirm, un-counseled prior conviction may not be used to increase the degree and the sentence of a later offense—likewise applied to an uncounseled delinquency adjudication. The holding in Bode arose out of the juvenile’s due-process right to the assistance of counsel during delinquency proceedings. Bode at ¶ 13-17. For *486 our purposes, Bode does no more than affirm a due-process right to counsel in delinquency proceedings; it offers no authority for prohibiting mandatory transfer under either the United States or Ohio Constitution.
{¶ 68} I agree with the majority that “[a]ll children are entitled to fundamental fairness in the procedures by which they may be transferred out of juvenile court for criminal prosecution.” Majority opinion at ¶ 26. In my view, however, the concept of fundamental fairness does not preclude mandatory transfer. Fundamental fairness and the requirements of procedural due process are met when, after a probable-cause hearing, the juvenile court determines that the juvenile qualifies for mandatory transfer pursuant to duly enacted statutory prerequisites and that there is probable cause to believe that the juvenile committed the charged offense. The procedures set out in the mandatory-transfer provisions and in the Juvenile Rules provide the requisite process and afford the juvenile fundamental fairness. I therefore conclude that R.C. 2152.10(A)(2)(b) and 2152.12(A)(1)(b) do not violate the rights to due process guaranteed by either the United States or Ohio Constitution.
{¶ 69} Because I conclude that Ohio’s mandatory-transfer provisions do not violate due process, I briefly consider—but ultimately reject—Aalim’s argument that they violate the right to equal protection under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution. The standards for determining whether a statute violates equal protection are “essentially the same under the state and federal Constitutions.” State v. Klembus, 146 Ohio St.3d 84, 2016-Ohio-1092, 51 N.E.3d 641, ¶ 8, citing McCrone v. Bank One Corp., 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 7.
{¶ 70} A statute that does not implicate a fundamental right or a suspect classification does not violate equal protection if it is rationally related to a legitimate government interest. State v. Williams, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 39, citing Eppley v. Tri-Valley Local School Dist. Bd. of Edn., 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 15. As stated in my due-process analysis, the mandatory-transfer provisions do not abridge fundamental rights. Nor do they involve a suspect classification; age is not a suspect classification for purposes of equal protection, State ex rel. Keefe v. Eyrich, 22 Ohio St.3d 164, 165-166, 489 N.E.2d 259 (1986), citing Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), and Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).
{¶ 71} Aalim argues that Ohio’s mandatory-transfer provisions irrationally treat children who are 16 or 17 when they commit a category-two offense with a firearm and are subject to mandatory transfer differently from children who are 14 or 15 and who are subject to discretionary transfer. Aalim states that “no ground can be conceived to justify” those age-based distinctions. I disagree.
*487 Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Andrew T. French, Assistant Prosecuting Attorney, for appellee.
Timothy Young, Ohio Public Defender, and Amanda J. Powell and Charlyn Bohland, Assistant Public Defenders, for appellant.
Rickell L. Howard, urging reversal for amicus curiae Children’s Law Center, Inc.
Maritza S. Nelson, Law Office of Maritza S. Nelson, L.L.C., urging reversal for amici curiae Juvenile Justice Coalition, League of Women Voters of Ohio, and Ohio Association of Child Caring Agencies.
Kimberly P. Jordan, urging reversal for amicus curiae Justice for Children Project, Ohio State University, Moritz College of Law.
{¶ 72} We grant substantial deference to the General Assembly when conducting an equal-protection, rational-basis review. Williams at ¶ 40. “ ‘[A] legislative choice * * * may be based on rational speculation unsupported by evidence or empirical data,’ ” Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ., 87 Ohio St.3d 55, 58, 717 N.E.2d 286 (1999), quoting Fed. Communications Comm. v. Beach Communications, Inc., 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), and the state is not obligated to produce evidence to sustain the rationality of a legislative classification, Columbia Gas Transm. Corp. v. Levin, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91, citing Am. Assn. of Univ. Professors at 58, 60.
{¶ 73} The mandatory-transfer provisions are “part of Ohio’s response to rising juvenile crime” and “one of the hallmarks of [the General Assembly’s] ‘get tough’ approach.” State v. Hanning, 89 Ohio St.3d 86, 89, 728 N.E.2d 1059 (2000). I agree with those Ohio appellate courts that have concluded that the General Assembly’s decision to single-out older juvenile offenders—who are “potentially more streetwise, hardened, dangerous, and violent”—is rationally related to the legitimate governmental interests in protecting society and reducing violent crimes. State v. J.T.S., 10th Dist. Franklin No. 14AP-516, 2015-Ohio-1103, 2015 WL 1303097, ¶ 45, citing State v. Anderson, 2d Dist. Montgomery No. 25689, 2014-Ohio-4245, 2014 WL 4792558, and State v. Lane, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010, 2014 WL 1900459. I therefore conclude that the mandatory-transfer provisions do not violate equal-protection principles under either the United States or the Ohio Constitution.
{¶ 74} For these reasons, I respectfully dissent.
O’Donnell, J., concurs in the foregoing opinion.
*488 D.K. Wehner, urging reversal for amicus curiae Montgomery County Public Defender.
David L. Strait, Assistant Public Defender, urging reversal for amicus curiae Franklin County Public Defender.
Melissa Lindsay, urging reversal for amicus curiae Family & Youth Law Center, Capital University Law School.
Dorianne Mason, urging reversal for amicus curiae Ohio Justice <& Policy Center.
Michele Temmel, urging reversal for amicus curiae Hamilton County Public Defender.
Beatrice Jessie Hill, urging reversal for amicus curiae Case Western Reserve University Schubert Center for Child Studies.
Marsha L. Leviek, urging reversal for amicus curiae Juvenile Law Center.
Nadia N. Seeratan, urging reversal for amicus curiae National Juvenile Defender Center.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Stephen P. Carney, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.