[Cite as *State v. Owens*, 2019-Ohio-2206.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    29098 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RAY OWENS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 2017-07-2601-B |

DECISION AND JOURNAL ENTRY

Dated: June 5, 2019

TEODOSIO, Presiding Judge.

{¶1}    Appellant, Ray Owens, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part, but reverses and remands in part.

I.

{¶2}    An Ohio State Highway Patrol trooper conducted a traffic stop of a vehicle occupied by Mr. Owens and T.D. The vehicle was soon searched after a K-9 Unit alerted to the presence of illegal drugs inside. The search revealed an abundance of illegal drugs, including fifteen grams of marijuana, sixty oxycodone pills, 549 tablets of THC, and ten grams of heroin.

{¶3}    Mr. Owens was indicted on three trafficking and three possession charges related to methylenedioxymethamphetamine ("MDMA"), oxycodone, and marijuana. He successfully motioned the trial court to represent himself and proceed without counsel in this matter, signing a written waiver of counsel form in open court. The trial court ordered his attorney to remain appointed as standby counsel. A supplemental indictment was then filed, charging Mr. Owens

with both trafficking in heroin and possession of heroin. No other waiver of counsel was obtained.

{¶4} The State later dismissed the aggravated trafficking in drugs (MDMA), aggravated possession of drugs (MDMA), and possession of marijuana charges. Mr. Owens' case proceeded to a jury trial where he was found guilty of aggravated trafficking in drugs (oxycodone), aggravated possession of drugs (oxycodone), trafficking in marijuana, trafficking in heroin, and possession of heroin. The trial court ordered a presentence investigation report and later sentenced him to a total aggregate prison term of eight years.

{¶5} Mr. Owens now appeals from his convictions and raises four assignments of error for this Court's review.

{¶6} For ease of analysis, we will reorganize and consolidate some of Mr. Owens' assignments of error.

II.

## ASSIGNMENT OF ERROR ONE

RAY WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT DID NOT PROPERLY ADVISE RAY OF THE DANGER OF SELF-REPRESENTATION. THUS, RAY DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVE HIS RIGHT TO COUNSEL.

{¶7} In his first assignment of error, Mr. Owens argues that the trial court did not properly advise him of the dangers of self-representation, and his waiver of counsel was therefore not knowingly, intelligently, and voluntarily made. We agree.

{¶8} "The Sixth Amendment to the United States Constitution provides: 'In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence.'"

*State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 22. *Accord* Article I, Section 10, Ohio Constitution. The structure of the Sixth Amendment implicitly provides a constitutional right to self-representation, as "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta v. California*, 422 U.S. 806, 819-820 (1975). A defendant may proceed to defend himself without counsel when he voluntarily, and knowingly, and intelligently elects to do so. *State v. Gibson*, 45 Ohio St.2d 366 (1976), paragraph one of the syllabus. For a waiver of counsel to be effective, however, the trial court has to make a sufficient inquiry to determine whether the defendant fully understands and relinquishes that right, which includes advising the defendant of the dangers and disadvantages of self-representation. *State v. Ott*, 9th Dist. Summit No. 27953, 2017-Ohio-521, ¶ 5. In determining the sufficiency of the trial court's inquiry, we review the totality of the circumstances. *State v. Trikilis*, 9th Dist. Medina Nos. 04CA0096-M and 04CA0097-M, 2005-Ohio-4266, ¶ 13. "'While no one factor is dispositive, the [] court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances.'" *State v. Clark*, 9th Dist. Medina No. 17CA0066-M, 2018-Ohio-3932, ¶ 9, quoting *State v. Bloodworth*, 9th Dist. Summit No. 26346, 2013-Ohio-248, ¶ 12. To avoid placing the trial court in the role of an adversary, the discussion of possible defenses and mitigating circumstances need not be fact specific, but may be a broader discussion of defenses and mitigating circumstances as applicable to the pending charges. *Trikilis* at ¶ 13. Various other factors may be considered as well, including the defendant's age, education, and legal experience. *Id.* We review whether a defendant has made a knowing, intelligent, and voluntary waiver of his right to counsel de novo. *Ott* at ¶ 5.

{**¶9**}   Moreover, Crim.R. 44(C) provides that a "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22."  In "serious offense" cases, e.g., felony cases, the waiver shall also be in writing.  Crim.R. 44(C); Crim.R. 2(C).  Nevertheless, a written waiver of counsel is not a substitute for compliance with Crim.R. 44(C), which requires an oral waiver in open court before the judge, recorded in accordance with Crim.R. 22.  *See Cuyahoga Falls v. Simich*, 5 Ohio App.3d 10, 12 (9th Dist.1982); *State v. Haag*, 49 Ohio App.2d 268, 270 (9th Dist.1976).  *See also State v. Engle*, 2d Dist. Montgomery No. 22455, 2009-Ohio-1944, ¶ 63 (recognizing a fact-pattern in which several acknowledgments made in the written waiver of counsel were belied by the actual transcript of the hearing, and noting that the transcript of the hearing necessarily governs); *State v. Tanner*, 9th Dist. Summit No. 24614, 2009-Ohio-3867, ¶ 9 ("Just because the written waiver said one thing does not mean that the [] court did not tell him about other consequences orally.")

{**¶10**} Mr. Owens' case presents us with a unique situation whereby a defendant purportedly waived his right to counsel prior to being indicted on *all* of the charges he would ultimately defend against at trial.  At a status conference on January 9, 2018, Mr. Owens successfully motioned the trial court to proceed without counsel.  He then signed a written waiver of counsel that specifically listed each of the six charges contained in his original indictment.  The trial court judge accepted the written waiver, signed it, and eventually filed it with the clerk of courts on January 25, 2018.  Meanwhile, the court filed a journal entry on January 11, 2018, granting Mr. Owens' motion to proceed without counsel and stating: "The Defendant was advised of his right to counsel and signed a waiver of counsel form in open court."  On January 18, 2018, a supplemental indictment containing two additional charges— trafficking in heroin and possession of heroin—was filed in Mr. Owens' case.  No further waiver

of counsel was obtained. We note that the trial court judge assigned to the case presided over the waiver of counsel proceedings and signed Mr. Owens' written waiver of counsel, but a visiting judge sitting on assignment later presided over the actual trial.

{¶11} Mr. Owens makes several arguments challenging his waiver of counsel, including: (1) He did not waive his right to counsel on the supplemental charges, as the written waiver only applied to the original indictment; (2) The written waiver does not advise him that post-release control on a felony of the first degree is a mandatory term of five years; (3) The trial court did not advise him regarding the theory of complicity; (4) The trial court should have inquired as to his "mental wellness"; and (5) The trial court was aware that he was "under the influence," as it required him to provide a urine sample after conviction. Because our forthcoming analysis of his first argument is dispositive, we need not address Mr. Owens' additional arguments under this assignment of error.

{¶12} In response to Mr. Owens' first argument, the State offers little in opposition, except to say that Mr. Owens cites to no authority requiring a new written waiver of counsel form when supplemental charges are indicted. However, when determining the knowing, intelligent, and voluntary nature of a waiver of counsel, this Court should consider whether the defendant was advised of the nature of the charges and the range of allowable punishment, and we may further consider whether he was advised of possible defenses and applicable mitigating circumstances. *See Clark* at ¶ 9; *Bloodworth* at ¶ 12.

{¶13} The record is abundantly clear that Mr. Owens' waiver of counsel occurred on January 9, 2018, yet he was not indicted on the two supplemental heroin charges until January 18, 2018. Thus, although Mr. Owens may very well have waived his right to counsel as to the six original charges, his trial encompassed those six charges as well as two additional heroin

charges that were never contemplated when he waived his right to counsel. *See State v. Smith*, 9th Dist. Summit No. 23006, 2007-Ohio-51, ¶ 13 (refusing to presume an understanding of the nature of *all* offenses, the range of allowable punishment, and possible defenses and mitigating factors involved in a second trial, even though the defendant experienced a previous trial for some similar charges). We fail to see how Mr. Owens could knowingly, intelligently, and voluntarily waive his right to counsel in this case when, at the time of his waiver, both parties and the court were only aware of *some* of the charges he would be defending against at trial. *See State v. Birinyi*, 8th Dist. Cuyahoga Nos. 95680 and 95681, 2011-Ohio-6257, ¶ 28 (determining a knowing, intelligent, and voluntary waiver of counsel in a first trial cannot be imputed to a retrial that involves additional charges not contemplated during the initial waiver); *State v. Adams*, 43 Ohio St.3d 67 (1989), syllabus (dealing instead with a waiver of the right to a speedy trial, and holding that the waiver "is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver"). Furthermore, Mr. Owens' supplemental heroin charges were both second-degree felonies. Once the first-degree felony MDMA and misdemeanor marijuana charges were dismissed, Mr. Owens' waiver of counsel only applied to two third-degree felonies (for oxycodone) and one fifth-degree felony (for marijuana). Thus, although the supplemental heroin charges arose out of the same set of circumstances, they were nonetheless distinct charges and clearly exposed Mr. Owens to a higher level of punishment beyond what he faced for the remaining charges. It is also not beyond the realm of possibility to surmise that the distinct, supplemental charges could require different, overall strategies and defenses at trial not originally contemplated by Mr. Owens or the court.

{¶14} The State also argues that we should affirm because Mr. Owens failed to ensure a transcript of the January 9, 2018, status conference was included in the record on appeal.

Despite Mr. Owens' duty to provide a complete record necessary for our review, however, the contents of that particular transcript could not possibly cure the fact that he was never indicted on two additional second-degree felonies until *after* he waived his right to counsel. The State does not contest the fact that no waiver of counsel, either in open court or in writing, was obtained in this case as to the two supplemental heroin charges. We are also highly cognizant of the fact that courts should indulge every reasonable presumption against the waiver of fundamental, constitutional rights. *See State v. Perry*, 9th Dist. Summit No. 25271, 2011-Ohio-2242, ¶ 11, citing *Brewer v. Williams*, 430 U.S. 387, 404 (1977). We therefore cannot presume under the facts of this particular case that Mr. Owens understood the nature of *all* charges he would be required to defend against at trial, the range of allowable punishment, and any possible defenses and applicable mitigating circumstances. *See Smith* at ¶ 13. Consequently, we must conclude that his waiver of counsel was not knowingly, intelligently, and voluntarily made. *See Ott* at ¶ 5; *Gibson* at paragraph one of the syllabus. Mr. Owens' convictions and sentence must be vacated, and the matter must be remanded back to the trial court for a new trial.

{¶15} Mr. Owens' first assignment of error is sustained.

## ASSIGNMENT OF ERROR THREE

RAY'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

## ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT COMMITTED PLAIN ERROR BY NOT MERGING THE OFFENSES AGAINST RAY

{¶16} In his third assignment of error, Mr. Owens argues that his convictions were against the manifest weight of the evidence. In his fourth assignment of error, he argues that the

trial court committed plain error by failing to merge allied offenses of similar import for purposes of sentencing.

{¶17} Our resolution of Mr. Owens' first assignment of error is dispositive of this appeal. Accordingly, we decline to address his third and fourth assignments of error as they have been rendered moot. *See* App.R. 12(A)(1)(c); *State v. Evans*, 9th Dist. Summit No. 28924, 2019-Ohio-603, ¶ 26.

## ASSIGNMENT OF ERROR TWO

RAY'S CONVICTIONS WERE NOT BASED UPON SUFFICIENT EVIDENCE AS A MATTER OF LAW

{¶18} In his second assignment of error, Mr. Owens argues that his convictions were not based on sufficient evidence. We disagree.

{¶19} Although our resolution of Mr. Owens' first assignment of error renders his third and fourth assignments of error moot, we must still address his sufficiency challenge, as a reversal on sufficiency grounds would bar retrial. *See Evans* at ¶ 17, citing *Trikilis*, 2005-Ohio-4266, at ¶ 19.

{¶20} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve

evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶21} Mr. Owens was convicted of aggravated trafficking in drugs under R.C. 2925.03(A)(2), which states: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [oxycodone], when the offender knows or has reasonable cause to believe that the [oxycodone] is intended for sale or resale by the offender or another person." He was also convicted of aggravated possession of drugs under R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use [oxycodone]." Because the oxycodone equaled or exceeded the bulk amount but was less than five times the bulk amount, both offenses were enhanced to felonies of the third degree. *See* R.C. 2925.03(C)(1)(c); R.C. 2925.11(C)(1)(b).

{¶22} Mr. Owens was convicted of trafficking in marijuana under R.C. 2925.03(A)(2), which states: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [marijuana], when the offender knows or has reasonable cause to believe that the [marijuana] is intended for sale or resale by the offender or another person." *See also* R.C. 2925.03(C)(3)(a) (classifying the offense as a felony of the fifth degree).

{¶23} Mr. Owens was convicted of trafficking in heroin under R.C. 2925.03(A)(2), which states: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [heroin], when the offender knows or has reasonable cause to believe that the [heroin] is intended for sale or resale by the offender or another person." He was also convicted of possession of heroin under R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use [heroin]." Because the amount of heroin equaled or

exceeds ten grams but was less than fifty grams, both offenses were enhanced to felonies of the second degree. *See* R.C. 2925.03(C)(6)(e); R.C. 2925.11(C)(6)(d).

{¶24} The trial court also instructed the jury on complicity. *See* R.C. 2923.03(A)(2) ("No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * *."). The Supreme Court of Ohio has held:

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "'[P]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id.* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971).

{¶25} Mr. Owens argues that the State presented no evidence at trial that he knowingly possessed the drugs found in his car. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "Possess" or "possession" means having control over an object, but may not be inferred solely from mere access to the object through ownership or occupation of the premises upon which the object is found. R.C. 2925.01(K). He also argues that the State presented no evidence that he shared the criminal intent of the principal offender, and he therefore could not be complicit in the commission of these offenses.

{¶26} Trooper Darryl Dowler testified at trial that he is a K-9 handler for the Ohio State Highway Patrol ("OSHP"). The State also introduced Trooper Dowler's dash cam video into

evidence. Trooper Dowler testified that, on June 12, 2017, he was stationary on I-80 in Summit County watching for traffic violations. He conducted a traffic stop after he observed a vehicle speeding, possibly displaying both a temporary Ohio registration tag and a Pennsylvania license plate, and following another vehicle too closely. Mr. Owens was the driver of the vehicle and another man ("T.D.") was the front seat passenger. According to Trooper Dowler, Mr. Owens appeared "overly nervous," was breathing hard, would only make limited eye contact, and his hands were shaking. T.D. was also breathing hard and looking straight ahead without making any eye contact. The trooper soon separated and secured the two men. When the trooper asked Mr. Owens who the passenger was, Mr. Owens said it was his cousin whom he just met a few days ago. He said his cousin's first name is "King," but he did not know his last name.

{¶27} Trooper Dowler walked his K-9 partner around Mr. Owens' vehicle, and the dog indicated that narcotics were present in the vehicle. The trooper explained to Mr. Owens that the dog hit on his vehicle and asked him if there was anything inside. On the dash cam video, Mr. Owens tells the trooper there is nothing in the vehicle, but says, "We got, I got chips and stuff in there." During a search of the vehicle, the trooper observed marijuana "shake," i.e., green leaves and green stems, all over the front passenger compartment of the car. He found marijuana in the glove compartment and other baggies of marijuana "shake" in the trunk. In the backseat, the trooper smelled a "real strong odor of raw marijuana" and found two plastic, black bags. He opened one bag and found some smaller, sealed, $1.00 bags of potato chips inside. He testified that "the odor was so strong," so he opened a chip bag and found another, smaller bag inside containing fifteen grams of marijuana. Other chip bags contained heroin, oxycodone, and various other pills. The trooper testified that, based on his training and experience, the amounts

of each drug and their packaging inside of sealed chip bags were not consistent with personal use. He testified that it was more consistent with distribution.

{¶28} The State also introduced an audio CD of Mr. Owens' interview with Trooper Mandy Rodriguez who works for the OSHP as a criminal patrol investigator. At the beginning of the interview, the trooper asks Mr. Owens about the other man in the car. Mr. Owens says the man is "like a third cousin," he just met him through another family member days ago, and they "just kicked it," but he "didn't know he was bringing back f*****g pot in f*****g chips bags * * *." He then says the other man owns a barber shop and he is supposed to get a haircut, but now he is "pissed" that will not happen. Mr. Owens continues: "Right now I'm just f*****g mad as f*****g Hell, the more I'm thinking about what the f**k I just went up there and f*****g did * * *." Mr. Owens explains that they went to Detroit to meet another family member, but when asked for the family member's name, he replies, "I don't know. I haven't the slightest f*****g clue." When discussing the trip further, he explains: "I didn't know anything about, all I know is we had some chip bags, was the only thing new in my freaking car. I smoke weed. I'm not gonna lie. I got, I got, I know I got some freaking weed, little freaking whatever is, little dabs of f*****g weed in my f*****g car." He then tells the trooper he is a mechanic and an Uber driver. He explains that he is "business-oriented" and wants to "get on the road" while "trying to do a business thing," so he was "seeing new cars" up there and "seeing different types of cars" in these areas. He then expresses concern that he is "'bout to get f****d up" and his plan is "'bout to get freaking hold, held up." Mr. Owens again speaks about their trip to Detroit to see family members, including his own sister, and explains: "But, I mean, honestly, chips. That's why I said there's a bag of f*****g chips and trash in my car. I, I told 'em that from the, there's a bag of f*****g chips, we just got some chips, and there's some fucking s**t

in my car, trash on my, in, on, and other than that, there was nothing else in my freaking car." When asked if he took any previous trips to Detroit, Mr. Owens cannot quite recall any details, except he knows he went there with his sister sometime last year. When asked about the travel time and if he was the driver, he says, "Yeah, I always drive." He says he was taking his cousin to see his cousin's mother in Detroit, but concedes that his cousin never saw his mother because "she never came through." He mentions the presence of his cousin's friend and another female in Detroit, but claims he did not talk to her because "there's rules, I mean, I mean, I don't even know, you know what I'm saying? That's, I don't talk to women, especially in the family." On their way home from Detroit, he says they "went to the store, grabbed some chips, and 'dipped.'" When questioned about his cousin's actions and whereabouts while in Detroit, Mr. Owens says, "He didn't do anything. All he did was, all I seen King do was put the chips in the car. That's it. That's all I seen him do was put the chips in the car." He then continues: "Look, I'm not gonna fake anything about no bag of freaking chips. That's why I said, 'bag of chips.'"

{¶29} Trooper Rodriguez testified at trial that all of the seized narcotics were laid out on a table behind Mr. Owens, but catty-corner to where the interview was being conducted. She can be heard on the audio CD telling him, "Go ahead and turn around," and Mr. Owens can be heard saying, "Holy f**k. What the Hell's that? What the fu-, aw, Hell no." Mr. Owens seemingly becomes irate at the sight of the drugs, but when asked if he wants to talk about what was found in his car, he replies, "No, I'm not a snitch * * * Look, listen, first of all, I don't know anything to snitch, but the fact is I'm pissed off that I ain't know nothing about in my fu-, none of that s**t. The f**k? Come on now." The interview concludes with Mr. Owens asking for an attorney and the trooper telling him that his story is not believable. Mr. Owens responds, "Why is my story not believable?"

{¶30} Trooper Rodriguez testified that Mr. Owens' story did not make any sense. She further testified that she did not believe his surprised and animated reaction when he turned around and saw the seized drugs. According to the trooper, "He just wasn't believable at all." She also testified that, in her experience, when someone says he is not going to be a snitch, it means he has knowledge of criminal activity, but is not going to "rat" or tell on his friend.

{¶31} After reviewing the evidence contained in the record in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence, if believed, to establish that Mr. Owens knowingly committed the offenses of aggravated trafficking in drugs (oxycodone), aggravated possession of drugs (oxycodone), trafficking in marijuana, trafficking in heroin, and possession of heroin. Trooper Dowler observed several indicators of illegal activity from Mr. Owens during the traffic stop, including being overly nervous, breathing hard, making limited eye contact, and shaking. When asked to identify his passenger, Mr. Owens claimed T.D. was a cousin whom he just met and only knew as "King." When the trooper told him the dog detected narcotics in his car, Mr. Owens immediately told the trooper, "I got chips and stuff in there." The trooper found marijuana "shake" all over the front passenger compartment of the car, found marijuana in the glove compartment, and smelled a strong odor of raw marijuana. The odor led him to two black bags, which contained smaller, sealed, potato chip bags. The trooper found marijuana, heroin, oxycodone, and various other pills inside of the sealed chip bags. The amounts of each drug and their packaging inside of sealed chip bags were consistent with trafficking, not personal use. In his interview with Trooper Rodriguez, Mr. Owens said he was "pissed" thinking about what he had done and he repeatedly mentioned chip bags without being asked about them. He admitted to having "weed" in the car, but said he was not going to be a snitch. Therefore, we conclude

that any rational trier of fact could have found, beyond a reasonable doubt, that Mr. Owens knowingly possessed the drugs found in his vehicle or was at least complicit in the commission of these offenses.

**{¶32}** Mr. Owens' second assignment of error is overruled.

### III.

**{¶33}** Mr. Owens' first assignment of error is sustained. The trial court's judgment is reversed in part, Mr. Owens' convictions and sentences are hereby vacated, and the matter is remanded to the trial court for a new trial. We decline to address his third and fourth assignments of error, as they have been rendered moot. Mr. Owens' second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part. The cause is remanded back to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed and remanded in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE CORGAN, Assistant Prosecuting Attorney, for Appellee.