[Cite as *Euclid v. Hedge*, 2022-Ohio-464.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF EUCLID, | : | |
| Plaintiff-Appellee, | : | No. 110473 |
| v. | : | |
| ASHAUGHNTA STAR HEDGE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** February 17, 2022

Criminal Appeal from the Euclid Municipal Court
Case No. 21CRB00087

### *Appearances:*

Kelley A. Sweeney, Director of Law, City of Euclid, and Mary Catherine Mason, Euclid Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Jonathan Sidney, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Ashaughnta Star Hedge ("Hedge"), appeals her conviction for theft. Finding merit to Hedge's appeal, we vacate the conviction and remand for further proceedings.

**{¶ 2}** On February 1, 2021, Hedge was charged with theft in violation of Euclid Codified Ordinances 541.02(a)(1), a first-degree misdemeanor, arising from a January 18, 2021 incident. Hedge was arraigned on February 23, 2021. Prior to her arraignment, Hedge viewed a video created by the Euclid Municipal Court advising defendants of their constitutional rights. At the arraignment, Hedge entered a plea of not guilty and proceeded to represent herself.

**{¶ 3}** The matter proceeded to a bench trial on April 16, 2021, after which Hedge was convicted of theft and sentenced to 30 days in jail. The municipal court suspended the 30 days based on Hedge's satisfactory completion of one year of a community-control sanction. The municipal court also sentenced Hedge to 40 hours of community service and participation in an antitheft program. Finally, the municipal court fined Hedge $150 and assessed court costs. The municipal court did not award restitution because the value of the allegedly stolen property was not confirmed.

**{¶ 4}** Hedge appeals her conviction, raising the following three assignments of error:

ASSIGNMENT OF ERROR ONE

The municipal court erred in failing to comply with Ohio Crim.R. 5 by not advising Hedge of the necessity that she demand a jury trial.

ASSIGNMENT OF ERROR TWO

The municipal court erred in denying Hedge her right to trial by jury in the absence of a knowing, voluntary, and intelligent waiver of this fundamental right.

ASSIGNMENT OF ERROR THREE

The municipal court erred in failing to advise Hedge of her right to counsel or ensure that Hedge's decision to proceed to trial without counsel was knowing, voluntary, and intelligent.

{¶ 5} We will address the third assignment of error first because it is dispositive. Within this error, Hedge argues that the municipal court failed to advise her of her right to counsel or ensure that her decision to proceed to trial without counsel was knowing, voluntary, and intelligent.

{¶ 6} The Sixth and Fourteenth Amendments to the United States Constitution guarantee criminal defendants brought to trial in any federal or state court the right to assistance of counsel before they can be validly convicted and punished by imprisonment. *See Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The Ohio Constitution, Article I, Section 10 guarantees the right to counsel at any trial, in any court within the state. Criminal defendants also have an independent constitutional right to forgo their right to counsel and represent their own interests. *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996), citing *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

{¶ 7} A defendant may assert the right to self-representation and "proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *State v. Gibson*, 45 Ohio St.2d 366, 377, 345 N.E.2d 399 (1976), paragraph one of the syllabus. "In order to establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right."

*Id.* at paragraph two of the syllabus. This inquiry requires the court to investigate the defendant's wish to represent himself and ensure that the defendant fully understands the dangers and disadvantages of self-representation so that the record establishes that the defendant knows what he is doing and his "choice is made with eyes open." *Highland Hills v. Nicholson*, 8th Dist. Cuyahoga No. 100577, 2014-Ohio-4671, ¶ 12, quoting *Faretta* at 835.

{¶ 8} Courts must indulge every reasonable presumption against waiver of counsel. *State v. Wellman*, 37 Ohio St.2d 162, 171, 309 N.E.2d 915 (1974). A valid waiver "'must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 40, quoting *Gibson* at 377. "For a petty offense, voluntary and knowing waiver may be shown through the court's colloquy with the defendant." *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 54.

{¶ 9} Crim.R. 5(A) provides that in misdemeanor cases in which the defendant is called upon to plea at the defendant's initial appearance, Crim.R. 10 governs the procedure. Crim.R. 10(C) provides in relevant part:

> When a defendant not represented by counsel is brought before a court and called upon to plead, the judge * * * shall cause the defendant to be informed and shall determine that the defendant understands * * * [t]he defendant has a right to counsel, and the right to a reasonable continuance in the proceeding to secure counsel, and, pursuant to

Crim.R. 44, the right to have counsel assigned without cost if the defendant is unable to employ counsel.

{¶ 10} Crim.R. 44(B) provides for assignment of counsel "[w]hen a defendant charged with a petty offense is unable to obtain counsel, [and] no sentence of confinement may be imposed * * * unless after being fully advised by the court, [the defendant] knowingly, intelligently, and voluntarily waives assignment of counsel." Such a waiver must occur in open court and be recorded. Crim.R. 22 and 44(C). *Nicholson* at ¶ 15. We review a defendant's waiver of the right to counsel de novo. *State v. Newman*, 8th Dist. Cuyahoga No. 109182, 2020-Ohio-5087, ¶ 17, citing *State v. Nelson*, 2016-Ohio-8064, 75 N.E.3d 785, ¶ 18 (1st Dist.).

{¶ 11} In this case, plaintiff-appellee, the city of Euclid ("Euclid"), argues that Hedge was advised of her right to counsel in an explanation-of-rights video that the municipal court plays to all defendants before their arraignment, again when Hedge was arraigned, and once more before trial. Euclid contends that in each instance, Hedge knowingly, intelligently, and voluntarily waived her right to counsel. Hedge does not dispute that the municipal court repeatedly advised her of her right to counsel. Rather, Hedge contends that these "cursory" colloquies did not advise her of the dangers and disadvantages of self-representation, potential defenses, and applicable mitigating circumstances. Hedge argues that the trial court failed to ensure Hedge understood the rights she was waiving, and without these advisements, her decision to represent herself was uninformed and her waiver of

counsel was unknowing, unintelligent, and involuntary. On the record before us, we find Hedge's argument more persuasive.

{¶ 12} A review of the record reveals that in the prerecorded explanation-of-rights video that the municipal court played prior to Hedge's arraignment, the trial judge stated in relevant part: "I'm also advising you that you have a right to an attorney. You have a right to a reasonable continuance to hire an attorney. If your charges carry the possibility of a jail sentence, you also have the right to an attorney appointed by the court if, in fact, you cannot afford an attorney."

{¶ 13} At the arraignment, the municipal court advised Hedge that she was charged with theft, a first-degree misdemeanor carrying a possible penalty of 108 days in jail and a one thousand dollar fine.[1] The municipal court asked if Hedge had watched the explanation-of-rights video. Hedge answered that she had. The court then asked Hedge the following:

Court: Do you understand that you have a right to a trial by jury; you have a right to subpoena witnesses; you have a right not to testify; you have no burden of proof?

You're a United States Citizen?

Hedge: Yes.

After Hedge entered a not guilty plea, the municipal court asked, "Do you plan on hiring an attorney?" Hedge replied, "I don't think I need to." The court responded, "Okay. That's completely up to you."

---

[1] The transcript of the arraignment reads 108 days. Euclid claims that the reference to 108 rather than 180 days was an error in transcription. Hedge is unsure whether the reference was an error in transcription or in the trial court's statement.

{¶ 14} At the pretrial, the court asked, "You will be representing yourself, Ms. Hedge?" Hedge replied, "Yes." The court then provided Hedge with a reference sheet that explained trial procedure and added, "Even though you're not an attorney, I have to hold you to the same standards I hold the prosecutor. So this sheet * * * describes * * * the procedures. You need to read this, become familiar with it, and be prepared to try your case on Friday, April 16th."[2]

{¶ 15} Finally, at trial, the municipal court engaged in the following colloquy with Hedge:

Court: And, Ms. Hedge, you were advised that you do have the right to an attorney. You were also afforded the right to a reasonable continuance to hire an attorney, correct?

Hedge: Yes.

Court: You were also afforded the opportunity to apply for a public defender, if necessary, if you were unable to afford an attorney, correct?

Hedge: Correct.

Court: And it is your decision to proceed without counsel; is that correct?

Hedge: It is.

Court: And we're prepared to go forward then?

Hedge: Yes.

_____

[2] Euclid attached the reference sheet to its appellee brief as Exhibit A. A party cannot add to the record on appeal by attaching materials that were not part of the record below. *State v. Hodges*, 2017-Ohio-9025, 101 N.E.3d 1045, ¶ 16 (8th Dist.), fn. 2, citing *State v. Workman*, 8th Dist. Cuyahoga No. 53581, 1988 Ohio App. LEXIS 1057, 10 (Mar. 24, 1988). We therefore cannot consider the reference sheet attached to Euclid's brief. Even if we could consider the reference sheet, it adds little to the analysis.

{¶ 16} In this case, although the municipal court advised Hedge of her right to counsel, the charge against her, and the penalties if she were convicted, the municipal court did not confirm whether Hedge understood her right to counsel.[3] The record shows that at her arraignment, Hedge answered a single "yes" to a compound question that referenced her right to counsel among several other rights and, before Hedge could answer, asked whether she was a U.S. citizen. Also, in this and subsequent colloquies, the municipal court did not advise Hedge of the dangers and disadvantages of self-representation, the possible defenses available to her, or any mitigating circumstances. Nor did the court investigate if Hedge was equipped to proceed with self-representation. Without these advisements, Hedge's waiver was not knowing, intelligent, or voluntary. *See Martin* at ¶ 44-45.

{¶ 17} The dissent states that in Ohio, a court must review "the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused" when determining whether the waiver was valid, citing *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 30, citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Obermiller*, the Ohio Supreme Court held that the trial court had not denied the defendant's right to self-representation when, after a lengthy colloquy with the court, the defendant withdrew his request to represent himself. The court recognized that "a defendant's unambiguous assertion of the right to self-

---

[3] Whether an error in transcription or in the trial court's statement, the record shows that the trial court advised Hedge that she faced up to 108 days in jail when the maximum penalty for a first-degree misdemeanor is 180 days in jail.

representation triggers a trial court's duty to conduct the *Faretta* inquiries to establish that the defendant is knowingly and voluntarily waiving his constitutional right to counsel." *Id.* The court also recognized that these inquiries include advising the defendant of "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.*, quoting *Faretta* at 835.

{¶ 18} The court observed that after the defendant in that case requested to waive counsel, the three-judge panel

> extensively questioned Obermiller regarding his request to waive counsel. The questions focused on Obermiller's familiarity with the criminal-justice system and [the statute under which he was charged], his educational background (with an emphasis on Obermiller's lack of legal education), and his knowledge of trial procedure. The panel [also] explored the various pitfalls related to self-representation, warned Obermiller that he would be held to the same standards as would a licensed attorney, and discussed with him the possible claims that he would forfeit on appeal if he waived counsel.  * * *

> Finally, the panel read parts of the indictment into the record and questioned Obermiller about his awareness of the crimes with which he was charged and whether he understood the concepts of lesser-included and inferior-degree offenses.

> * * *

> This colloquy lasted approximately 34 minutes[.]

*Id.* at ¶ 38-40.  In reviewing whether a 34-minute colloquy was excessive, the court confirmed that in Ohio, a trial judge "'must investigate [a defendant's request for self-representation] as long and as thoroughly as the circumstances of the case before him demand.'" *Id.* at ¶ 42, quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723-724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).  The court reasoned that "[a] less searching

colloquy [under the circumstances of that case] would have been nothing more than 'token obedience' to the important rights guaranteed by the Sixth Amendment." *Id.*, quoting *Von Moltke* at 723.

{¶ 19} The dissent's focus on Hedge's performance at trial is misplaced. The dissent searches the record for any indication that Hedge appreciated the dangers and disadvantages of self-representation and understood defenses to the charge. *Obermiller* is clear that a trial court conducts the *Faretta* inquiry up front, without reliance on a reviewing court to conduct that inquiry by inference and after the fact. We recognize that *Obermiller* involved a capital case and warranted a 34-minute colloquy to ensure the trial court engaged in something more than "token obedience to," or even substantial compliance with, the defendant's right to counsel. This is not a capital case. However, even in misdemeanor cases in which the defendant elects self-representation, the trial court still has a duty to make at least some investigation of the defendant's educational background, familiarity with the criminal-justice system, understanding of the charge, and knowledge of trial procedure to determine whether the defendant is equipped to proceed with self-representation, as well as explore, even if briefly, the pitfalls of self-representation, defenses to the charges, mitigation, and possible claims that the defendant might lose on appeal by waiving counsel to ensure that the defendant makes the choice with "eyes open." *See Obermiller* at ¶ 41. Nothing in the record shows that the municipal court made this inquiry, without which Hedge's waiver is invalid.

**{¶ 20}** When remedying an invalid waiver in petty offense cases, panels in this and other appellate districts have sometimes vacated the conviction and ordered a new trial. *See Nicholson*, 8th Dist. Cuyahoga No. 100577, 2014-Ohio-4671, at ¶ 18 (vacating the conviction); *Berea v. Ferich*, 8th Dist. Cuyahoga No. 99258, 2013-Ohio-3248, ¶ 22 (same); *Cleveland v. Anderson*, 8th Dist. Cuyahoga No. 97787, 2013-Ohio-165, ¶ 15 (same); and *Garfield Hts. v. Reda*, 8th Dist. Cuyahoga No. 73558, 1998 Ohio App. LEXIS 5060, 8-9 (Oct. 29, 1998) (same).

**{¶ 21}** Other panels have upheld the conviction and vacated only the jail sentence and community-control sanction. *See Cleveland v. Daniels*, 8th Dist. Cuyahoga No. 106136, 2018-Ohio-4773, ¶ 15 (vacating jail sentence); *Garfield Hts. v. Williams*, 8th Dist. Cuyahoga No. 102279, 2016-Ohio-381, ¶ 18 (vacating the jail sentence and community-control sanction); *Lyndhurst v. Lasker-Hall*, 8th Dist. Cuyahoga No. 102806, 2016-Ohio-108, ¶ 14 (vacating the jail sentence); *Parma v. Wiseman*, 8th Dist. Cuyahoga No. 102404, 2015-Ohio-4983, ¶ 13 (same); *Lyndhurst v. Di Fiore*, 8th Dist. Cuyahoga No. 93270, 2010-Ohio-1578, ¶ 15 (vacating the jail sentence if the defendant's charges had not been amended to a single minor misdemeanor before trial); *Lakewood v. McDonald*, 8th Dist. Cuyahoga No. 84465, 2005-Ohio-394, ¶ 11 (vacating the community-control sanction); *Cleveland v. Crable*, 8th Dist. Cuyahoga No. 67073, 1995 Ohio App. LEXIS 959, 11 (Mar. 27, 1995) (vacating the jail sentence); *Oakwood v. Shackelford*, 8th Dist. Cuyahoga No. 50062, 1986 Ohio App. LEXIS 5486, 5-6 (Jan. 30, 1986) (same).

**{¶ 22}** The remedy of vacating only the jail sentence and community-control sanction arises from the language of Crim.R. 44(B) and the assumption that a defendant is not entitled to counsel if no sentence of confinement is imposed. *State v. Wamsley*, 2016-Ohio-2885, 64 N.E.3d 489, ¶ 18 (5th Dist.), citing *Williams*, 8th Dist. Cuyahoga No. 102279, 2016-Ohio-381. Hedge points out that this court's precedent of vacating only the jail sentence and community-control sanction either precedes or does not cite *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, which observed, "whether jail or prison was actually imposed as a disposition is irrelevant. It is the *potential* sanction that matters." (Emphasis sic.) *Id.* at ¶ 22.

**{¶ 23}** We acknowledge that the question in *Bode* was "whether the state may use an uncounseled juvenile adjudication to enhance penalties for an adult conviction for operating a motor vehicle while intoxicated ('OVI') under R.C. 4511.19(G)(1)(d)." *Id.* at ¶ 1. *Bode* extended the rule in *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, from adults to juveniles to hold that "an adjudication of delinquency may not be used to enhance the penalty for a later [OVI] offense * * * when the adjudication carried the possibility of confinement, the adjudication was uncounseled, and there was no effective waiver of the right to counsel." *Id.* We find the reasoning supporting the court's holding in *Bode* persuasive given that the theft charge against Hedge carried the possibility of confinement, the adjudication was uncounseled, and Hedge's waiver of her right to counsel was ineffective.

{¶ 24} As the *Bode* Court observed, the right to counsel under the federal constitution is limited to cases in which actual incarceration is imposed. *Id.* at ¶ 23, citing *Scott v. Illinois*, 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Nichols v. United States*, 511 U.S. 738, 743, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). Nevertheless, "'many, if not the majority, of [s]tates guarantee the right to counsel whenever imprisonment is authorized by statute, rather than actually imposed.'" *Id.*, quoting *Nichols* at 748, fn. 12. In Ohio, the possibility of confinement is the determining factor whether counsel is necessary in a particular case. *Id.* at ¶ 24, citing *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033. *Bode* thus questions whether there is "any logic or purpose in the felony/misdemeanor distinction," finding that an "attorney is crucial whenever there is the *possibility* of custody," which is precisely "what an attorney will protect against." (Emphasis sic.) *Id.*

{¶ 25} Other districts have followed *Bode* in recognizing that the appropriate remedy absent an effective waiver is to order a new trial, not vacate the jail portion of the defendant's sentence. *See State v. Condos*, 9th Dist. Summit No. 29782, 2022-Ohio-112, ¶ 11 (revisiting *State v. Ott*, 9th Dist. Summit No. 27953, 2017-Ohio-521, and *State v. Owens*, 9th Dist. Summit No. 29098, 2019-Ohio-2206, and reaffirming that a new trial is the proper remedy following *Bode*); *see also Wamsley*, 2016-Ohio-2885, 64 N.E.3d 489, at ¶ 18-25.

{¶ 26} That a new trial is the proper remedy under *Bode* is bolstered by a more recent decision of the Ohio Supreme Court in *State ex rel. Ogle v. Hocking*

*Cty. Common Pleas Court*, Slip Opinion No. 2021-Ohio-4453. In *Ogle*, the court reaffirmed the United States Supreme Court's holding in *Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), that "'[a] court's jurisdiction at the beginning of trial may be lost "in the course of proceedings" due to failure to complete the court— as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake.'" *Id.*, citing *Zerbst* at 468. Recognizing that self-representation is disfavored and every reasonable presumption against waiver of counsel should be indulged, the *Ogle* Court concluded that the result of an ineffective waiver of counsel is that the conviction is void. *Id.* at ¶ 12, 16.

{¶ 27} We follow *Ogle* in finding that without a knowing, intelligent, and voluntary waiver of counsel, the conviction is void, and *Bode* in finding that the proper remedy in such circumstances is to vacate the conviction.

{¶ 28} We therefore sustain Hedge's third assignment of error, vacate her conviction, and remand for further proceedings, including a new trial if necessary.

{¶ 29} In her first assignment of error, Hedge argues that the municipal court failed to comply with Crim.R. 5 by not advising Hedge of the necessity of demanding a jury trial. In her second assignment of error, Hedge argues that the municipal court erred in denying Hedge her right to a jury trial absent a knowing, intelligent, and voluntary waiver. Having sustained Hedge's third assignment of error, her first and second assignments of error are moot. App.R. 12(A)(1)(c).

{¶ 30} Judgment vacated and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY;
SEAN C. GALLAGHER, A.J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

SEAN C. GALLAGHER, A.J., DISSENTING:

{¶ 31} I respectfully dissent and would affirm the decision of the court. The majority's decision, in effect, creates a rule that the failure to articulate each and every pitfall of self-representation in a petty offense case nullifies a defendant's ability to knowingly, intelligently, and voluntarily waive the right to counsel. I cannot join that conclusion, which is based on Hedge's failure to provide a complete representation of our standard of review, and therefore, I respectfully dissent.

{¶ 32} Although the majority has accurately set forth the black-letter law in Ohio on waiving the right to counsel for petty offenses, omitted from the discussion is that appellate courts must determine whether "a waiver of the right to counsel in a no contest plea is voluntarily, intelligently, and knowingly made by *looking to the*

*totality of the circumstances.*"  (Emphasis added.)  *Mayfield Hts. v. Aziz-Hakim*, 8th Dist. Cuyahoga No. 98176, 2012-Ohio-5890, ¶ 6, citing *State v. Calvillo*, 76 Ohio App.3d 714, 719, 603 N.E.2d 325 (8th Dist.1991), citing *State v. Carter*, 60 Ohio St.2d 34, 38, 396 N.E.2d 757 (1979).  We do not review the advisements in isolation or without consideration of the defendant's individual circumstances, but must instead consider whether the defendant's particular situation compels a reversal.  *Id.*

{¶ 33} In Ohio, the determination of whether a waiver of counsel was valid depends "upon the particular facts and circumstances surrounding that case, *including the background, experience, and conduct of the accused.*"  (Emphasis added.)  *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 30, citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).  "Whether a defendant knowingly, intelligently, and voluntarily waived the right to counsel is an issue that we review de novo."  *State v. Furr*, 1st Dist. Hamilton No. C-170046, 2018-Ohio-2205, ¶ 10, citing *State v. Nelson*, 2016-Ohio-8064, 75 N.E.3d 785, ¶ 17 (1st Dist.).  Under the de novo review of the totality of the circumstances, we should be overruling Hedge's argument based on the failure to present a discussion regarding the particular facts and circumstances of her case.  App.R. 16(A)(7).

{¶ 34} Hedge has not presented the underlying facts or personal circumstances of her case, or an explanation of the trial proceedings, much less has she provided any discussion of how her particular circumstances warrant the reversal of her conviction and remand for new trial.  App.R. 16.  Instead, Hedge asks

us to review the matter for structural error without regard to her particular circumstances. Appellant brief at fn.1. According to Hedge, "it is clear" that the trial court erred based on *Berea v. Ferich*, 2013-Ohio-3248, ¶ 8, in light of the "structural error." Hedge's request is not only contrary to black-letter law, but also as noted by the dissent in *Ferich*, the majority's position creates an outcome that imposes too high of a burden for petty offense cases — treating a petty offense as if it were a serious one for the purposes of determining the validity of the waiver. *Id.* at ¶ 30. Tellingly, the citations in the majority opinion fall into the same trap as those from *Ferich*, heavily relying on the advisement requirements of serious offense cases. *Id.* at ¶ 28. As already noted in *Ferich*, in *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, 863 N.E.2d 1024, ¶ 39, the Ohio Supreme Court affirmed the more broadly stated advisements that we are facing here by distinguishing between the severity of the underlying offenses. *Id.*

{¶ 35} But regardless, in light of Hedge's failure to present the complete standard of review and to present the particular circumstance that preclude her from intelligently waiving her right to counsel, in reviewing the transcript and the record as we must to undertake a de novo review of the proceedings, it is apparent that Hedge was provided the required advisements as set forth in *State v. Gibson*, 45 Ohio St.2d 366, 373, 345 N.E.2d 399 (1976), based on her particular circumstances. This court has affirmed a waiver of counsel based on similar advisements. *Lakewood v. Lane*, 8th Dist. Cuyahoga No. 104534, 2017-Ohio-1039, ¶ 15-17; *see also Brooke*; *State v. Taylor*, 8th Dist. Cuyahoga No. 90674, 2008-Ohio-

5255, ¶ 15. Thus, the sole issue is whether the court provided sufficient information to provide Hedge with "an apprehension" of the "possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." In Hedge's particular situation, in consideration of the totality of the circumstances, Hedge's waiver of her right to counsel was valid because her conduct at trial demonstrated an appreciation of the dangers of self-representation and knowledge of the defenses to the charge, giving rise to the inference that she was aware of the defenses and mitigation at the time of waiving her right to counsel.

{¶ 36} Although the parties failed to provide any factual background as required under App.R. 16(A)(6), that background is relevant to Hedge's ability to understand the proceedings. The theft charge arose from a dispute between neighbors. The victim and her live-in significant other were arguing, causing the victim's possessions to be placed in the hallway of the apartment building. Several items, like a child's swing and a child's backpack, were either placed inside Hedge's apartment to be held until the victim could retrieve them (according to Hedge), or were taken in retribution for a broken fingernail Hedge suffered as a result of a scuffle between Hedge and the victim (according to the victim). The trial came down to the credibility of the witnesses, the victim, and Hedge — as Hedge argued at trial. The trial court found the state's witnesses to be more credible.

{¶ 37} At trial, Hedge cross-examined the witnesses seeking to highlight the discrepancies between the witnesses' testimony and between prior statements. Her

cross-examination demonstrates an appreciation for the defenses to the charges and the means to proving those defenses. In addition, after taking the stand in her own defense and being advised of her Fifth Amendment rights, Hedge presented her own witnesses, attempting to demonstrate that she did not illegally possess the items but instead was holding them for the victim. Further, when second-guessing her decision to waive counsel during trial at the start of the defense's case in chief based on her fear of not knowing how to proceed, the trial court provided Hedge with the latitude to present her defense. The city objected to several lines of questions on hearsay grounds, which were overruled upon Hedge's explaining that she was not using the testimony for the truth of the matter asserted — with the trial court providing the legal phrasing after Hedge explained the reason for the testimony in layman's terms.

{¶ 38} In short, Hedge was able to present the defenses to the merits of the charge, from which an inference arises demonstrating Hedge's appreciation of the possible defenses available to her, and of the mitigating circumstances. Under the totality of the circumstances, Hedge has not demonstrated that her waiver was anything but freely given. *Aziz-Hakim,* 8th Dist. Cuyahoga No. 98176, 2012-Ohio-5890 (the defendant's knowledge of the court system belied his claims of not understanding the gravity of his waiver). Because Hedge was aware of the defenses at trial, any advisement by the trial court of those specific defenses and any potential mitigation at the time of her waiver would have been redundant. Hedge was aware of that which she now claims precluded her from knowingly, voluntarily and

intelligently waiving her right to counsel such that it cannot be demonstrated that the advisements the majority claims are lacking would have altered the course of the proceedings.

{¶ 39} And finally, in light of the majority outcome, we cannot avoid having to consider the remedy for invalid waivers of counsel in misdemeanor cases through this district's en banc process. As the majority notes, this court is divided as to the appropriate remedy for finding a waiver of counsel invalid. Some panels vacate the sentence only, but maintain the finding of guilt. *Garfield Hts. v. Williams*, 8th Dist. Cuyahoga No. 102279, 2016-Ohio-381, ¶ 18 (in part recognizing that a community-control sanction with a suspended sentence is an "actual imprisonment" under Crim.R. 44). Other panels vacate the conviction, in terms of both the finding of guilt and the final sentence, and remand for a new trial. *Ferich*, 8th Dist. Cuyahoga No. 99258, 2013-Ohio-3248, at ¶ 22. The majority's attempt to distinguish those cases based on the fact that the potential sentence is the controlling factor is misplaced. In both divergent branches of this district's conclusions, the potential sentence is irrelevant to the outcome.

{¶ 40} Neither *State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 28, nor *State ex rel. Ogle v. Hocking Cty. Common Pleas Court*, 2021-Ohio-4453, ¶ 12, rescue this district from having to initiate en banc proceedings to answer the question of the appropriate remedy. In *Bode*, the Ohio Supreme Court held that "the possibility of confinement as a disposition for a juvenile adjudication requires waiver of the right to counsel by the juvenile before the adjudication may be validly

used as an enhancement offense under R.C. 4511.19." That holding has no bearing on the remedy to an invalid waiver of counsel in misdemeanor cases. But more important, in the potential conflict case, *Williams*, the panel concluded that a suspended sentence coupled with the imposition of community-control sanctions constitutes "actual imprisonment" triggering the need for counsel. *Williams* at ¶ 18. Despite that conclusion, the panel vacated the sentence, but retained the finding of guilt.

{¶ 41} *Ogle* is likewise inapplicable. In that writ case, the Ohio Supreme Court confirmed that a sentencing entry was void for want of jurisdiction based on the failure to provide counsel before sentencing. *Ogle* at ¶ 12, 19. That conclusion is not in dispute and does not impact the validity of this district's cases concluding that the remedy for the improper wavier of counsel in petty offense cases is to vacate the sentence. This district's differing conclusions as to the appropriate remedy for an invalid waiver of counsel in misdemeanor cases create a mess and are in need of resolution through App.R. 26.

{¶ 42} Because Hedge failed to provide a discussion of the totality of her particular circumstances and instead relies on a generic recitation of black-letter law, I would overrule her assigned error challenging her waiver of counsel. As a result, this case is not the appropriate vehicle to resolve this district's conflicting statements of law. For this reason, I would address her remaining claims on the merits and I respectfully dissent.